**In re the Marriage of John L. BERTHIAUME, Petitioner, Respondent,**

v.

**Kathleen M. BERTHIAUME, Appellant.**

No. C2–84–2020.

Court of Appeals of Minnesota.

May 28, 1985.

Mark W. Gehan, Jr., St. Paul, for respondent.

M. Sue Wilson, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Presiding Judge.

Kathleen Berthiaume appeals from a judgment and decree entered in a dissolution action. She disputes the award of joint legal and physical custody, the property division, the child support award, and

the trial court's denial of attorney's fees. She also alleges that the trial judge committed error by failing to remove himself from hearing her motion for supervised visitation and by denying that motion.

## FACTS

Kathleen and John Berthiaume were married in April 1976. They have two children: Jessica, born in 1976, and Kristine, born in 1978. Kathleen was 27 years old at the time of the dissolution trial; John was 28.

A four-day trial was held on the issues of custody and property distribution. The trial focused primarily on the parties' parenting abilities and on the source of the children's unusual knowledge of sexual matters. Kathleen alleged that John sexually abused the children. John alleged that Kathleen allowed the children access to sexually explicit materials and that she behaved in sexually inappropriate ways in the presence of the children.

On July 24, 1984, the trial court issued an order awarding the parties joint legal and physical custody. The order provided Kathleen with physical custody during the school year and John with custody during the summer. The order also provided each parent with visitation privileges while the children were with the other parent. This order and memorandum addressed only the custody issue.

On September 19, 1984, the trial court issued a memorandum concerning, among other issues, child support, distribution of John's profit-sharing trust account, payment of the children's therapy and attorney's fees. With respect to child support, the court found that the parties' current income after statutory deductions is: John $1,963 per month and Kathleen $897 per month. The court departed from the child support guidelines and awarded Kathleen $480 per month in child support. Following the guidelines, the child support award would have been $588.90.

In its September 19, 1984 memorandum, the trial court also awarded each party one-half of John's profit-sharing trust account and ordered Kathleen to pay the taxes which would result from John's withdrawal of one-half of the funds from the account. The trial court also determined that the children needed additional therapy and the court ordered the parties to split the costs of such therapy. Finally, the trial court ordered each party to pay his/her own attorney's fees.

The final judgment and decree was issued on October 30, 1984; the July 24, 1984 order and memorandum and the September 19, 1984 memorandum were incorproated into that final judgment and decree.

On October 12, 1984 (before the final judgment and decree was issued), Kathleen brought a motion for an order requiring that all visitation between John and the two children be supervised. Kathleen based this motion on an allegation that the two children were sexually abused during an October 3, 1984 visit with John. The motion was to be heard before a judge other than the trial judge, but it was subsequently transferred to the trial judge's calendar, since the trial judge still had the parties' divorce proceedings under advisement. At the hearing on the motion, Kathleen filed a notice to remove the trial judge, pursuant to Minn.Stat. § 487.40 (1982). The trial judge declined to remove himself, and he subsequently denied Kathleen's motion for supervised visitation.

## ISSUES

1. Did the trial court abuse its discretion by awarding joint legal and physical custody?

2. Did the trial judge erroneously fail to remove himself from hearing appellant's motion for supervised visitation?

3. Did the trial court erroneously deny appellant's motion for supervised visitation between respondent and the children?

4. Did the trial court err in deviating from the child support guidelines?

5. Did the trial court err in considering the tax consequences of a withdrawal from respondent's profit-sharing trust account?

6. Did the trial court err in requiring each party to bear one-half of the cost of the children's therapy?

7. Did the trial court abuse its discretion by denying appellant's request for attorney's fees?

## ANALYSIS

### I.

A determination of child custody must be based on the best interests of the child. Minn.Stat. § 518.17, subd. 3 (1982). In examining the interests of a child, the court must make written findings which reflect consideration of the factors set out in Minn.Stat. § 518.17, subd. 1 (1982). *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 82, 249 N.W.2d 168, 171 (1976). When joint custody is contemplated, the trial court must consider the additional factors specified in Minn.Stat. § 518.17, subd. 2 (1982). These factors include the ability of parents to cooperate in child rearing, methods for resolving the parents' disputes, and the detrimental effect which a sole custody award may have upon the child. The trial court need not make a specific finding for each of the statutory factors, nor must each factor be specifically addressed by the trial court. It is sufficient if the findings as a whole reflect that the trial court has taken the relevant statutory factors into consideration in reaching its decision. *Rosenfeld v. Rosenfeld*, 311 Minn. at 83, 249 N.W.2d at 171–72.

The record as a whole demonstrates that the trial court properly considered the relevant factors. Initially, the trial court stated that it fully considered the factors specified in Minn.Stat. § 518.17, subds. 1 and 2. The trial court then found that each parent had a strong and loving reciprocal relationship with the two children. The trial court also found that both parents were capable of providing the children with proper parental care and discipline and, hence, both were capable of having custody of the children. The trial court determined that the children needed the guidance and care of both parents. While the court rec-

ognized the parties' lack of cooperation during the dissolution proceeding, the court concluded that their mutual concern for the children will enable them to cooperate in the future. Finally, the trial court strongly disagreed with Kathleen's allegations of sexual abuse and concluded that there was no evidence that John had sexually abused the children. Our review of the evidence supports this conclusion. The trial court did not make any specific finding as to the source of the children's inordinate sexual awareness. The trial court did, however, consider it necessary for the children to continue receiving therapy.

Relying on *Chapman v. Chapman*, 352 N.W.2d 437 (Minn.Ct.App.1984), Kathleen contends that the trial court's award of joint custody was an abuse of discretion since the parties cannot cooperate. In *Chapman*, this court reversed the trial court's award of joint custody on the basis that the parents had basic differences concerning the health care, religious training and general upbringing of their children and they had not been able to communicate or cooperate in resolving these differences. 352 N.W.2d at 441. *See also Heard v. Heard*, 353 N.W.2d 157, 161–62 (Minn.Ct. App.1984) (court reversed trial court's joint custody award because the trial court did not make specific findings on any of the § 518.17, subd. 2 factors and the testimony revealed the parties were unable to communicate).

The present case is distinguishable from both *Chapman* and *Heard*. Obviously, there is evidence that the parties have not cooperated with one another during the dissolution proceeding. The trial court heard testimony from each party criticizing the other party's parenting skills. The record does not, however, indicate that the parties have basic differences concerning the general upbringing of their children. There is little evidence that the parties cannot communicate or cooperate in reaching major decisions concerning their children. Both parties have been receptive to the social service agencies that have been involved with helping the children. Both

parties agree that their children need continued therapy. Both parties share the same concern for providing the children with a stable living environment. The fact that the parties share these concerns demonstrates their ability to cooperate and agree on the major issues in their children's lives. Thus, we cannot say the trial court abused its discretion in determining that the parties would be able to cooperate as necessary after the custody issue was put to rest. *See Schultz v. Schultz*, 358 N.W.2d 136, 139 (Minn.Ct.App.1984).

## II.

After the court issued its custody order but before the final judgment and decree was issued, Kathleen made a motion for an order requiring supervised visitation between John and the children. Kathleen filed a notice to remove the trial judge from hearing that motion, pursuant to Minn.Stat. § 487.40 (1982). The trial judge declined to remove himself. Kathleen challenges the trial judge's failure to remove himself.

■ There are no cases which directly interpret Minn.Stat. § 487.40. There are, however, cases which interpret an analogous statute governing district court procedures. *See* Minn.Stat. § 542.16 (1982). An affidavit of prejudice under that statute is not timely if the period allowed for a new trial under Minnesota Rules of Civil Procedure 59 has not yet expired. *Lappi v. Lappi*, 294 N.W.2d 312, 316 n. 3 (Minn. 1980). As long as there is still time in an action for a new trial pursuant to Rule 59, the original proceeding is not cut off and an affidavit of prejudice is not effective to remove the sitting judge. *Id.* (*citing State ex rel. Olson v. District Court*, 196 Minn. 56, 263 N.W. 908 (1935); *State ex rel. Pedersen v. Qvale*, 187 Minn. 546, 246 N.W. 30 (1932)). The rationale for this rule is that the judge who tries a case to a verdict must go through the subsequent proceedings. *State ex rel. Pedersen v. Qvale*, 187 Minn. at 547, 246 N.W. at 30.

■ In the present case, as of October 12, 1984, the trial judge had issued an

order dealing with the custody issue, but he had not yet issued the *final* judgment and decree which incorporated his custody order. Thus, the original proceedings before the trial judge were not yet terminated and, as a result, Kathleen's notice of removal was not timely. The trial judge properly declined to remove himself from hearing the October 12, 1984 motion.

## III.

Kathleen argues that the trial court's denial of her request for supervised visitation was erroneous.

At the October 12, 1984 hearing on Kathleen's motion, Kathleen alleged that John sexually abused the two children during an October 3, 1984 visit. There was medical evidence that mild-moderate erythema (redness) was present in the children's vaginal areas. The source of irritation was unknown.

■ The trial court denied Kathleen's request for supervised visitation. The court found no basis for determining that John had sexually abused the children or that they were sexually abused while in his custody. The trial court did order an investigation into the incident since the medical reports indicated that the irritation which the children experienced may or may not have been related to sexual abuse. Based upon the inconclusive evidence before the trial court, the trial court did not abuse its discretion in denying Kathleen's motion for supervised visitation.

## IV.

Kathleen next contends that the trial court erroneously departed from the child support guidelines, Minn.Stat. § 518.551 (1984). The trial court awarded Kathleen $480 per month in child support. Following a strict application of the guidelines, the child support award would have been $588.90.

The relevant factors in determining a child support award are the financial resources and needs of the children and both

parents, the standard of living the children would have enjoyed had the marriage not been dissolved, and the physical, emotional, and educational needs of the children. Minn.Stat. § 518.17, subd. 4 (1982). A court may deviate downward from the child support guidelines if it makes "express findings of fact as to the reason for the lower order," as well as "findings of fact regarding the financial resources and needs of the child." Minn.Stat. § 518.17, subd. 5 (1984).

The trial court found it necessary and appropriate to depart from the guidelines because of the joint legal and physical custody award. The trial court recognized that Kathleen will incur more ongoing expenses than John. The court also acknowledged that John will incur a substantial amount of expenses since he will have custody of the children for approximately three months each year. In order to account for the expenses that John will incur, the trial court deviated from the guidelines.

■ The trial court sufficiently articulated its rationale for deviating from the guidelines. The record discloses a proper consideration of the relevant factors. The trial court recognized that, as a result of the joint custody determination, the financial circumstances of the parties and their children will be somewhat different than in a case where sole custody is awarded to one parent. While the trial court could have more fully articulated a consideration of the children's nonfinancial needs and the standard of living that the children would have enjoyed had the marriage not been dissolved, the trial court obviously considered these two relevant factors when it recognized that Kathleen will need to maintain a home for the children (i.e., a stable environment) even when the children are in John's custody.

■ Kathleen appears to argue that *Kowalzek v. Kowalzek*, 360 N.W.2d 423 (Minn.Ct.App.1985), requires a specific enumerated finding for each of the five factors in Minn.Stat. § 518.17, subd. 4. *Kowalzek* does not require such a rigid approach. *Kowalzek* simply requires the court to gen-erally consider the five statutory factors in conjunction with each other. *See id.* at 426.

The trial court properly made this general consideration. Thus, the trial court did not erroneously deviate from the child support guidelines.

## V.

The trial court determined that the value of John's profit-sharing trust account is approximately $21,000 and awarded each party one-half of the value of that account. The trial court found that John will have to withdraw funds in order to satisfy the award to Kathleen as well as satisfy some of his pending debts (which included attorney's fees). As a result of the withdrawal, the trial court concluded that a taxable event is certain to occur. The trial court required Kathleen to bear the tax burden for the amount withdrawn from the trust.

■ It is within the trial court's discretion to consider the tax consequences of a property award. *Helland v. Helland*, 354 N.W.2d 591, 592–93 (Minn.Ct.App.1984) (*citing Johnson v. Johnson*, 277 N.W.2d 208, 213 (Minn.1979)).

■ Given the evidence presented in the instant case, the trial court's determination that a withdrawal from the trust will be necessary and its consideration of the potential tax consequences of the withdrawal was not an abuse of its broad discretion.

## VI.

Kathleen next argues that it was error for the trial court to order each party to be responsible for one-half of the costs of the children's therapy. Kathleen's position is that the children are in need of therapy because John sexually abused them, and therefore, John should be solely responsible for the costs of therapy.

■ Kathleen's position is not persuasive. The trial court determined that the children were in need of more therapy, not because they were sexually abused, but

because they appeared to have an unusual knowledge of sexual matters. Furthermore, the trial court determined that the evidence did not demonstrate that John had sexually abused the children. To require John to pay for all the costs of therapy on the basis that he sexually abused the children is inconsistent with the rest of the trial court's determinations concerning the children. The trial court did not err in requiring each party to bear one-half of the costs of the children's therapy.

## VII.

Kathleen also challenges the trial court's denial of attorney's fees. Kathleen claims that the trial court did not properly consider the financial resources of the parties.

 Minn.Stat. § 518.14 (1982) provides that a court in a dissolution proceeding, after considering the financial resources of both parties, may award attorney's fees to ensure that a party can protect his or her rights and interests. *See also Lappi v. Lappi*, 294 N.W.2d 312, 316 (Minn.1980). A court's denial of attorney's fees will not be disturbed on appeal absent a clear abuse of discretion. *Heard v. Heard*, 353 N.W.2d 157, 162 (Minn.Ct.App. 1984). There was no such abuse here.

## DECISION

The trial court did not abuse its discretion by awarding joint legal and physical custody.

The trial judge properly declined to remove himself from appellant's motion for supervised visitation.

The trial court did not err in denying appellant's motion for supervised visitation between respondent and the children.

The trial court did not err in deviating from the child support guidelines.

The trial court did not err in considering the tax consequences of a withdrawal from respondent's profit-sharing trust account.

The trial court did not err in requiring each party to bear one-half of the cost of the children's therapy.

The trial court did not abuse its discretion by denying appellant's request for attorney's fees.

Affirmed.